(636 P.2d 188)
No. 52,443

LARRY A. WRIGHT, *Appellant,* v. C. ROBERT BELT, *et al., Appellees.*

Petition for review denied January 15, 1982.

Opinion filed November 19, 1981.

*Roger L. Gossard,* of Becker, Hildreth, Eastman, Gossard and Bell, of Coffeyville, for appellant.

*Roy Kirby,* of Coffeyville, for appellees.

Before JUSTICE MCFARLAND, presiding, SPENCER, J., and MARVIN O. BRUMMETT, District Judge Retired, assigned.

MCFARLAND, J.: This is an action arising from the termination of a partnership agreement, the partnership business being the practice of public accountancy. Plaintiff Larry A. Wright was the terminating partner and brought this action against the remaining partners, defendants C. Robert Belt and Richard D. Locke, to recover monies claimed due him under the agreement. Defendants filed a counterclaim seeking damages for plaintiff's alleged violations of the restrictive covenant contained in the agreement, as well as an injunction prohibiting future violations.

The parties agree summary judgment was correctly entered in favor of plaintiff on his claim in the amount of $64,711.65. Plaintiff appeals from: (1) The summary judgment entered in favor of defendants, which held plaintiff had violated the restrictive covenant in the contract and allowed substantial damages to be offset from plaintiff's judgment; (2) the injunction issued against him which severely restricts his present practice by additional limitations and extends the effective period of the restrictive covenant.

The keystone issue is the propriety of the trial court's determination that plaintiff was in violation of the agreement's restrictive covenant.

Plaintiff's deposition was taken prior to entry of summary

judgment. In said deposition plaintiff sets forth in meticulous detail how he has practiced accountancy since termination of the partnership. The parties agree such narration shall constitute the factual basis from which the determination should be made relative to whether the plaintiff violated the restrictive covenant.

Of necessity, the facts must be set forth in considerable detail. From April 3, 1972, to December 31, 1978, plaintiff and defendants operated a firm of certified public accountants pursuant to a written partnership agreement, under the name of C. Robert Belt & Company, in Coffeyville, Montgomery County, Kansas. The contract provided that any partner could terminate his interest in the partnership at anytime upon giving written notice of intent to terminate at least three full calendar months in advance. In addition to being paid his share of accumulated profits at the time of termination, the capital interest of the terminating partner was to be purchased by the partnership pursuant to the following formula:

"The purchase price of any such 5% interest owned by the terminating partner for a period of more than 5 years prior to termination shall be 5% of an amount equal to the gross income of the partnership for the full calendar year previous to the year in which notice of termination has been given."

The restrictive covenant at issue herein provides:

"In the event of termination hereunder and the continuation of the business by the remaining partner or partners, *the terminating partner agrees not to engage in the practice of public accountancy in Montgomery County, Kansas, for a period of 3 years from the date of such termination.*" (Emphasis added.)

Plaintiff gave timely notice of his intent to terminate his interest in the partnership effective December 31, 1978. At that time he owned a 20% interest in the partnership.

After plaintiff gave his notice of termination, and prior to December 31, 1978, the parties held conferences at the firm concerning plaintiff's doing work for partnership clients after he left the firm. He was requested not to do so by defendants. He was also asked to advise firm clients, in writing, of his covenant not to compete in Montgomery County. Plaintiff did not agree to either request.

On January 1, 1979, plaintiff established his own office in Neodesha, situated in Wilson County, Kansas. Neodesha is located just north of the Wilson-Montgomery County line, and is approximately 13 miles from Independence and 28 miles from

Coffeyville, the two major Montgomery County cities. Plaintiff also had done accounting work in Chautauqua County, immediately west of Montgomery County.

Later than the opening of the Neodesha office, but sometime prior to trial, plaintiff opened an office in South Coffeyville, Oklahoma, which is just across the state line to the south of Coffeyville. South Coffeyville and Coffeyville share a common telephone directory, including the Yellow Pages section. Plaintiff's South Coffeyville public accounting office is advertised therein. Plaintiff's home at all relevant times has been in Coffeyville, where he resides with his wife and children and he commutes daily to Neodesha or other business locations. Some of plaintiff's clients live, work or have businesses in Montgomery County. Plaintiff does accounting and/or tax work for about 200 clients, approximately 50% to 60% of whom are former clients of the partnership. Material from his Montgomery County clients is (1) brought to Neodesha by the client, (2) mailed to Neodesha by the client, or (3) delivered to plaintiff's home. Plaintiff does the pencil-and-paper work on them in Neodesha, then either brings the finished work product back to Coffeyville for redelivery to the client or mails the work to the client from Neodesha.

Phone calls to and from clients both within and without Montgomery County are made and received at his Neodesha office 80% to 90% of the time. The other 10% to 20% are received at or made from his home in Coffeyville.

Some of the work plaintiff does for his clients requires the use of a computer. As plaintiff no longer has access to the partnership's computer, he takes the work to B & R Computer Service in Coffeyville, then picks up the work product when it is completed. He uses the computer service work product in completing the final work product in Neodesha. He pays B & R for this service.

Mike Loy, a Pittsburg accountant, had a contract with the Montgomery County Commissioners to assist in budget preparation. Loy and plaintiff had an arrangement whereby plaintiff did some of the budget work in his Neodesha office. Plaintiff had previously turned down the offer to work for the county commissioners and had recommended Loy's employment.

Plaintiff is employed as treasurer of U.S.D. 445 in Montgomery County at a salary of $275.00 per month. The previous treasurer was a local banker. Initially, defendants contended that the

serving as treasurer of the school district constituted the practice of public accounting, but they have wisely backed away from this position.

Plaintiff does not challenge the validity of the restrictive covenant. Rather, he contends he has fully complied therewith. Accordingly, we are not concerned with the reasonableness of the covenant which is the usual battleground in such controversies. See 41 A.L.R.2d 15, 43 A.L.R.2d 94, 45 A.L.R.2d 77, and 46 A.L.R.2d 119.

The trial court considered these facts and concluded:

"Plaintiff is and has been engaged in the practice of public accountancy in Montgomery County, Kansas, in contravention of the noncompete provisions of Paragraph 12 of the Partnership Agreement, as a matter of law. The breach of this covenant not to compete began on January 1, 1979, and continues to this day."

We do not agree.

The partnership business was the performance of personal professional services. In this regard the clause in question is more akin to a restrictive covenant between employer and employee than to a noncompetition covenant included in a contract for the sale of a retail business. A covenant not to compete contained in a contract of employment is to be strictly construed against the employer. *Eastern Distributing Co., Inc. v. Flynn,* 222 Kan. 666, Syl. ¶ 3, 567 P.2d 1371 (1977). See also *H & R Block, Inc. v. Lovelace,* 208 Kan. 538, 544, 493 P.2d 205 (1972). The remaining partners are asserting the restrictive covenant herein and the same should be strictly construed against them.

The undisputed evidence is that at no time since the partnership termination has the plaintiff (1) maintained an office for the practice of public accountancy in Montgomery County, or (2) held himself out to the public as practicing public accountancy in Montgomery County. The only restriction placed upon plaintiff was that he not "engage in the practice of public accountancy in Montgomery County, Kansas, for a period of 3 years from the date of such termination." Taking work home from the office cannot be a violation of the clause. For illustration, the fact that a Jackson County, Missouri, attorney might bring a file to his Johnson County, Kansas, home for some evening study does not mean the attorney is engaged in the practice of law in Kansas. We conclude the uncontroverted evidence fails to show any violation

of said restrictive covenant when the clause is given strict construction in favor of plaintiff.

If the former partners had desired to place additional restrictions upon terminating partners they could have so provided in their agreement—so long as public policy was not violated. This they did not do, but they have apparently rectified this omission in a subsequent agreement not involved herein.

Having determined the trial court erred in concluding that plaintiff has breached the restrictive covenant herein, other issues raised need not be determined.

We note the following portion of the judgment designated as B [2]:

"Defendants are given credit against the judgment entered in favor of plaintiff for the cash surrender value of the life insurance policy carried by defendants on plaintiff's life as of January 1, 1979, plus all premiums paid by defendants on said policy to keep the same in force from January 1, 1979, to the date of this decree."

No complaint is made on appeal of this insurance offset, and accordingly the same is not disturbed by the opinion herein.

The judgment entered in favor of defendants on their counterclaim is reversed and remanded with directions to enter judgment for plaintiff on defendants' claims for damages arising from the alleged contract breach, except for the insurance offset, and to dissolve the injunction.